UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
JAMES E. FOX, JOHN H. MAKOWSKY, and
NICHOLAS J. CRISMALE, Individually and on
Behalf of All other Similarly Situated,

                                Plaintiffs,        MEMORANDUM OPINION
                                                        AND ORDER

        -against-                                CV 00-5145 (TCP) (ETB)

CHEMINOVA, INC. et al.,

                                Defendants.
------------------------------------------------------------------X

Presently before the Court is a motion by defendants Cheminova Inc. and Cheminova A/S (collectively, "Cheminova" or "defendants") for an order precluding plaintiffs, James E. Fox and others ("plaintiffs"), from offering evidence regarding punitive damages, or in the alternative, for an order compelling complete responses to damage discovery. Plaintiffs oppose the motion.

I.     BACKGROUND

     A.     History of the Discovery Disputes Prior to February 16, 2006

Only the most recent history of this case relevant for purposes of the present motion will be set forth herein. Pursuant to a conference before me on December 19, 2005, defendants' counsel, in late December 2005, served its first set of damages interrogatories ("Defendants' First Set of Damages Interrogatories") upon plaintiffs' counsel. (See Cheminova Defendants' First Set of Damages Interrogatories to Members of the Plaintiff Class ("Defendants' First Set of Damages Interrogatories"), annexed as Exh. A to Declaration of Robert J. Burns, Esq. in Support

1

of Order of Preclusion, or, in the Alternative, Order Compelling Production ("Burns Decl.").) At some point thereafter, the interrogatories were transformed into a "damages questionnaire" to be submitted to the plaintiff class members. This questionnaire, which paralleled the language of the interrogatories, requested, inter alia, "complete and accurate copies of your federal and state income tax returns for each year from 1995 through 2004, with all filed worksheets, schedules, and forms attached to theses returns. . . In addition, please provide executed Authorizations for years 1999 through 2005. A copy of the Authorization is annexed hereto as Exhibit A." (Defendants' First Set of Damages Interrogatories ¶ 5. See also Defendants' First Set of Damages Interrogatories Exh. A, IRS Form 4506, Request for Copy of Tax Return.) By letter dated December 22, 2005, plaintiffs' counsel moved for a protective order against Cheminova's interrogatories "because most of the information requested by the Questionnaire is, or will be available to Cheminova from Special Master James M. Catterson in the form of claim forms and tax records from approximately 235 class members whose incomes collectively represents at least two-thirds of the income earned by the class." (Pls.' Letter Motion for a Protective Order, from Gladstone N. Jones to the undersigned, dated December 22, 2005, at 1.) Plaintiffs argued that the Questionnaire was unduly burdensome, particularly with respect to the absent class members not part of the group of 235 who had submitted tax records and proof of claim forms to the Special Master (hereinafter, the "settlement claimants"). (Id. at 6-7.) In his conclusion, plaintiffs' counsel stated: "[P]laintiffs urge this Court to enter a protective order that prohibits Cheminova from propounding its proposed Questionnaire on all 1,100 absent class members. Rather, plaintiffs urge the Court to limit discovery to the 235 members who have submitted Proof of Claim Forms and to limit any questionnaire to relevant questions that seek information

unavailable to Cheminova through other sources." (Id. at 7.) On January 6, 2006, Cheminova was able to review the files of Special Master Catterson, which included proof of claim forms and miscellaneous (but incomplete) tax returns of the approximately 235 settlement claimants. (Burns Decl. ¶ 5.) By letter dated January 13, 2006, the defendants filed opposition to the plaintiffs' motion for a protective order. Defendants argued that this is a case about individualized, rather than aggregate damages, and that defendants are entitled to damages discovery with respect to all 1,100 class members and not limited to the settlement distribution protocols or information provided to Special Master Catterson by only 235 class members. (Letter from Christopher G. Kelly to the undersigned, dated January 13, 2006.) In mid-January, plaintiffs' counsel produced miscellaneous addition tax returns for certain of the 235 settlement claimants, along with some, though not all, copies of tax return authorizations. (Burns Decl. ¶ 6.)

By order dated January 18, 2006, the undersigned denied plaintiffs' motion for a protective order without prejudice to renewal, depending on the outcome of the initial trial on liability. Thereafter, by Order dated January 19, 2006 and Amended Order dated January 20, 2006, Judge Platt set forth a trial plan by which the three named plaintiffs would be tried on the issues of liability, punitive liability, and causation (for all plaintiffs), and entitlement to pecuniary damages for the three named plaintiffs. (Amended Order by Judge Platt, dated January 20, 2006.) If the jury determines that one or both defendants are liable for punitive damages, then the jury will be reconvened to determine the amount to be awarded the class as a whole for punitive damages. (Id.) By order dated January 26, 2006, I modified the January 18, 2006 order to permit damages discovery in conformance with the trial plan set forth by Judge

Platt. The January 18, 2006 order did not, however, affect the denial of plaintiffs' motion for a protective order. (See Order by the undersigned, dated February 17, 2006.) On January 27, 2006, defendants served damages discovery demands addressed to the three named plaintiffs, and interrogatories seeking information regarding plaintiffs' punitive damages claim. (Letter from Christopher G. Kelly to Judge Platt, dated February 9, 2006, at 2.)

Thereafter, by letter dated January 27, 2006, the defendants continued to argue that, because the plaintiffs intend to base their claim for punitive damages on their experts' industry-wide aggregate damages calculations, defendants still needed individual discovery from all 1,100 class members. (Letter from Christopher G. Kelly to the undersigned, dated January 27, 2006.) In response, plaintiffs continued to insist that defendants did not need discovery from all absent class members, and that plaintiffs had produced to defendants the tax records and proof of claim forms for the 235 class members who participated in the partial settlement. (Letter from Gladstone N. Jones to the undersigned, dated February 2, 2006.) Then, by letter dated February 9, 2006, defendants' counsel maintained that not only had it not received interrogatory responses from the entire class of 1,100, it had not received complete responses from the 235 settlement claimants. (Letter from Christopher G. Kelly to the undersigned, dated February 9, 2006, at 1.)

In early February, the parties attempted to resolve some of the discovery disputes. Defendants' counsel states that, over several conferences between opposing counsel, defendants have agreed to defer at this time any obligation for plaintiffs to respond to its damages interrogatories seeking discovery relating to non-pecuniary damages (i.e., Defs.' Interrogatories Numbers 12 and 13). (Burns Decl. ¶ 12.) According to defendants, plaintiffs agreed to provide by February 15, 2006 "all additional documents they could gather regarding the alleged

4

pecuniary damages sustained by the 235 participating settlement claimants" (id.), which would include "written authorizations allowing Cheminova to obtain federal tax returns filed by these plaintiffs from the IRS. . . ." (Letter from Christopher G. Kelly to Judge Platt, dated February 9, 2006, at 3.) Plaintiffs' counsel confirmed this understanding in a letter to Judge Platt dated February 13, 2006, stating "[p]laintiffs are hopeful that by February 15th, we will be able to produce individualized responses to the Damages Interrogatories and an additional executed IRS release form from every one of these approximately 235 absent class members." (Letter from Gladstone N. Jones to Judge Platt, dated February 13, 2006, at 1.) Apparently plaintiffs' hopes did not pan out since this information remains unproduced in large part.

      B.      <u>The Discovery Disputes at Present</u>

Despite the parties' apparent attempts to resolve at least some of the ongoing discovery issues in this action, on February 21, 2006, defendants filed the instant motion pursuant to Federal Rule of Civil Procedure 37, seeking an order precluding the plaintiffs from introducing at trial any evidence relating to punitive damages, or alternatively, compelling plaintiffs to immediately produce full and complete responses to Cheminova's damages discovery requests. (Defs.' Mem. at 2.)

Defendants argue that such relief is necessary because plaintiffs' incomplete document productions and insufficient interrogatory responses have prejudiced defendants and deprived them and their experts of evidence necessary to conduct their damages analysis. (Id. at 3.) Defendants argue primarily that plaintiffs have failed to produce a considerable amount of discovery requested in Defendants' First Set of Damage Interrogatories, propounded on December 19, 2005, particularly information concerning the 235 settlement claimants' tax forms.

5

(Burns Decl. at 7-10.) According to the defendants, these deficiencies include, inter alia:

> i) IRS 1040 Forms
> Defendants contend that of "the 215 class claimants whose discovery materials have been reviewed and preliminarily analyzed by Cheminova's experts, approximately 50% are missing 1040 federal tax return forms for all or some years. Of this 50%, approximately two-thirds are missing the 1040 form for *all* years reviewed (1996-2004)." (Id. at 7 (emphasis in original); see also Burns Decl. Exh. F.)
>
> ii) IRS W-2 Forms
> Defendants contend that of the claimants who have produced federal tax form 1040, over one-third of them filed joint returns with their spouse. (Id. at 8.) Defendants state that many of these plaintiffs did not produce W-2 wage statements, thereby "rendering it impossible in many instances to separate out the wages earned by the plaintiff-claimant (which are critically important to the calculation of damages in this case), and those earned by the plaintiff-claimant's spouse (which are properly excluded from any damages calculations)." (Id. at 8; see also Burns Decl. Exh. G.)
>
> iii) Interrogatories Regarding Mitigation of Damages
> Interrogatories 10(c) and 10(d) of defendants' first set of damages interrogatories sought information regarding plaintiffs' replacement income and/or mitigation of damages. Interrogatory 10(c) requests that each class member "state whether you have attempted to minimize the amount of your lost income or wages, and if so, please state how you have attempted to do so." (Defs.' First Damages Interrogatories ¶ 10(c).) Interrogatory 10(d) asks each class member to "state whether you have obtained, or have attempted to obtain, employment other than that involving the commercial harvest of lobsters from Long Island Sound since 1999," and if so, to provide more specific information concerning such employment. (Id. ¶ 10(d).) Defendants state that of the 225 damages interrogatory responses produced on behalf of class claimants, 214 responded to Interrogatory 10(c) with only the word "Yes." (Burns Decl. ¶ 22; see also Burns Decl. Exh. H.) Similarly, 125 class claimants responded to Interrogatory 10(d) with "Yes," or "Yes. I received no benefits."

(Burns Decl. ¶ 22; see also Burns Decl. Exh. H.)

In their opposition to the defendants' motion, the plaintiffs do not argue that they have provided defendants with all of the requested documents and interrogatory responses. Indeed, by plaintiffs' own accounting, as of February 21, 2006, only 111 of the 232 class members listed in plaintiffs' "Years of Tax Records produced" chart had fully complied with defendants' request for tax returns from 1995 to 2004 and IRS Form 4506. (Declaration of Lynn E. Swanson Pursuant to 28 U.S.C. § 1746(A) in Opposition to Cheminova's Motion for an Order Precluding Plaintiffs from Offering Evidence Regarding Punitive Damages, or to Compel Complete Responses to Damage Discovery ("Swanson Decl."), Exh. A.) Plaintiffs instead offer several reasons why they have adequately satisfied their discovery obligations, including: (1) plaintiffs were not served with the discovery requests at issue until January 31, 2006 (Pls.' Mem. at 5); (2) the three named plaintiffs have produced their tax records and supporting documents, and "[d]efendants should be able to glean meaningful information from all of these responses" (id. at 5); (3) the interrogatory responses which defendants characterize as incomplete are sufficient under Federal Rule of Civil Procedure 33(d) because where respondents answered only "yes" to questions concerning whether they had made efforts to minimize their lost income, defendants could consult the tax returns to determine the answers to the specific follow-up questions (id. at 11); (4) defendants do not need evidence regarding absent class members' mitigation of compensatory damages at this time because the individual compensatory damages claims are not going to tried at phase one of the trial (id. at 6-7); and (5) the information provided by the 235 settlement claimants, while incomplete, is sufficient because "the absent class members are not required to respond to discovery and . . . plaintiffs are not required to put on evidence of mitigation of their damages in the case of punitive damages." (id. at 9.).

7

II.     DISCUSSION

   A.   Legal Standard to Compel Discovery

Federal Rule of Civil Procedure 37(a)(2)(A) provides, in pertinent part:

> If a party fails to make a disclosure required by Rule 26(a), any other party may move to compel disclosure and for appropriate sanctions. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the party not making the disclosure in an effort to secure the disclosure without court action.

Fed. R. Civ. P. 37(a)(2)(A). The defendants have satisfied their meet and confer burden as movants by including in their motion papers the affidavit of defendants' counsel Robert J. Burns, stating that plaintiffs' and defendants' counsel conferred in good faith in the attempt resolve the discovery dispute with the defendant's counsel. (Burns Decl. ¶ 12.)

   1.   Interrogatory Number 5: Request for Tax Records

Taking each argument in the order presented above where plaintiffs' opposition summarized, first, it is crucial to note that, contrary to plaintiffs' suggestion, the interrogatories primarily at issue here are the Defendants' First Damages Interrogatories, propounded to all class members on December 19, 2005. The January 31, 2006 discovery requests plaintiffs refer to are Defendants' Set of First Punitive Damages Interrogatories to Plaintiffs, dated January 27, 2006, propounded to only the three named plaintiffs, following Judge Platt's entry of the order setting forth the trial plan. Thus, there is no merit to plaintiffs' misleading suggestion that plaintiffs have had less than one month to comply with the requested discovery. With respect to argument (2) above, while plaintiffs' counsel asserts that the three named plaintiffs have produced their "tax records and supporting documents," defendants contend, and plaintiffs do not dispute, that the 1040 forms, jointly filed by the three named plaintiffs with their spouses, do not include the W-2

wage statements defendants need to attribute wage income to the individual underlying taxpayers. (Burns Decl. ¶ 20; Pls.' Reply Mem. at 6.) Defendants state that such is the case for many of the class members, not just the three named plaintiffs. (Burns Decl. ¶ 20.) The W-2 wage statements were specifically requested as part of the request for complete copies of class members' federal and state income tax returns in Defendants' First Damages Interrogatories. (See Defendants' First Damages Interrogatories ¶ 5.) While plaintiffs assert that they have produced "tax records and supporting documents" for the class members, and in particular, that the three named plaintiffs "have produced each year of requested tax records [and] all of the information supporting those records such as receipts and check stubs," the plaintiffs apparently do not mean that they have produced all of the tax records and supporting documents <u>as requested in defendants' interrogatories</u>. (See Pls.' Mem. at 5.) This fact further calls into question the proper interpretation of plaintiffs' chart, which suggests that 111 of the class members have produced "All" of their tax records from 1995 to 2004 and IRS Form 4506. (Swanson Decl. Exh. A.) It appears that plaintiffs have construed defendants' request for "complete and accurate copies of your federal and state income tax returns for each year from 1995 through 2004" to mean class members must provide only certain tax documents, despite the interrogatories' specific request for "<u>all</u> filed worksheets, schedules, and forms attached to these returns (including but not limited to Schedule A, Schedule C, Schedule C-EZ, Schedule D, Schedule E, Schedule SE, Form W-2, Form 1065, Form 1099, Form 4562, and Form 4797)." (Defendants' First Damages Interrogatories ¶ 5.)

2. <u>Interrogatories Number 10(c) and 10(d)</u>

Defendants also argue that the answers to the "mitigation damages"

interrogatories, Interrogatory 10(c) and 10(d), are non-responsive. (Defs.' Mem. at 5-7; Burns Decl. at 8-10.) These interrogatories inquired as to whether or not the class member had attempted to minimize the amount of lost income or wages and/or obtain employment other than commercial lobster harvesting, and if so, to provide specific details as to the efforts made, nature of alternative employment, salary, and related information. (Defendants' First Set of Damages Interrogatories No. 10(c) and No. 10(d).) The majority of responding plaintiffs answered "Yes," but provided no adequate additional information. (Burns Decl. ¶ 22.) Plaintiffs argue that the answers are satisfactory, pursuant to Federal Rule of Civil Procedure 33(d), which provides that where an answer to an interrogatory may be ascertained from business records, the answering party may "specify the records from which the answer may be derived or ascertained [and] afford the party serving the interrogatory reasonable opportunity to examine, audit, or inspect such records. . . ." (Pls.' Mem. at 10-12 (citing Federal Rule of Civil Procedure 33).) Plaintiffs argue that defendants can obtain the information from the tax records or proof of claim forms defendants have been provided. (Pls.' Mem. at 10.) However, plaintiffs have not provided the defendants with a full set of tax forms for each settlement claimant, so there are undoubtedly many instances in which the defendants cannot ascertain this information. Moreover, the questions posited cannot be answered adequately by a reference to tax data. For example, certain information sought in the interrogatories, such as "whether you have attempted to obtain [] employment other than that involving the commercial harvest of lobsters from Long Island Sound since 1999. . . the date you first began to seek such alternate employment. . . what you did to pursue such alternate employment. . ." is clearly not information that would be contained in a tax return. Moreover, despite the direction in Rule 33(d) that a "specification shall be in

10

sufficient detail to permit the interrogating party to locate and to identify [the information], as readily as can the party served," in their interrogatory responses, plaintiffs provide no specification as to where the information could be located, beyond "referr[ing] the Defendants to those documents and tax records previously forwarded to" defendants' counsel. Such a response is unacceptable in these circumstances. See Morin v. Nationwide Federal Credit Union, 229 F.R.D. 364, 366 (D. Conn. 2005) (finding that plaintiffs' response of "See attached documents," where attached documents were voluminous and contained a wide range of records and documentation, was inadequate: "[w]ithout any identification by the Plaintiffs as to which documents satisfy which interrogatories, the Defendants are unable to discern which documents contain the Plaintiffs' answers, and are left to speculate as to precisely what the Plaintiffs' intend to provide as their answer under oath."); Pray v. The New York City Ballet Co., No. 96-Civ. 5723, 1997 WL 737707, at * 1 (S.D.N.Y. November 28, 1997) (granting plaintiffs' motion to compel, stating "[a]lthough I agree with defendant that Rule 33(d) ordinarily prevents an interrogating party from shifting the burden of reviewing voluminous documents to its adversary, the procedural posture of the current dispute clearly indicates that plaintiff is merely trying to isolate and identify the issues and not attempting to shift a burden that is properly borne by them. . . both sides have already done the work of reviewing the underlying documents, and plaintiffs are merely seeking to determine whether defendant's calculations agree with theirs."); Nonferrous BM Corp. v. Daniel Caron Ltd., No. 94 Civ. 7705, 1996 WL 208182, at *1 (S.D.N.Y. April 26, 1996) (granting plaintiff's motion to compel, finding "Rule 33(d) required defendant to give a detailed specification as to which documents contain the answers; defendant failed to do so. . . .").

Finally, the core of plaintiffs' opposition to defendants' motion is that the defendants do not need evidence regarding absent class members' mitigation of compensatory damages at this time because the individual compensatory damages claims are not going to tried at phase one of the trial. (Pls.' Mem. in Opp'n at 4, 6-7, 9.) In other words, plaintiffs argue that the defendants do not need discovery regarding the class members' mitigation efforts to defend against the punitive damages claim. (Id.) At the outset, it is significant to note that, from the time plaintiffs received the first damages interrogatories (December 2005) to the present, plaintiffs did not argue that defendants were not entitled to detailed damages discovery from the 235 settlement claimants. Rather, plaintiffs' opposition arguments until now centered solely around limiting the scope of discovery to the 235 settlement claimants as opposed to the entire potential class of approximately 1,100 individuals. However, now that the parties have the benefit of Judge Platt's order setting forth the plan by which this case will be tried, and now that defendants have limited the scope of their discovery inquiries to the 235 settlement claimants, plaintiffs have entirely shifted their focus from consent to arguing that "[d]efendants' only reason for requesting discovery now from absent class members is to rebut Plaintiffs' punitive damage case." (Pls.' Mem. at 6.) Plaintiffs argue that because a plaintiff is not required to mitigate a defendant's punitive liability, defendants have no basis for seeking discovery related to mitigation, and plaintiffs have no obligation to provide it. (Id. at 6-8, citing cases to support the argument that mitigation of damages should not be a factor in the determination of punitive liability or punitive damages). Plaintiffs are simply contriving a straw man to knock down. By focusing on their own mis-characterization of the nature of the discovery defendants are seeking and defendants' motivations for seeking it, plaintiffs have distorted the issues presently before the Court. The

issue presently before the Court is whether Cheminova is entitled to mitigation information to calculate the plaintiffs' true economic loss. Indeed, at the core of this dispute is the parties' theories of how class monetary damages should be calculated. Plaintiffs' argument, buttressed by the report of their damages expert, is that the class-wide compensatory damages upon which any award of punitive damages would be based is properly determined based upon the "total economic loss to the class," i.e., an industry-wide aggregate calculation. (See Pls.' Mem. at 6.) Plaintiffs' expert, Robert Unsworth, explained how he arrived at the amount of estimated losses ($86 million) as follows: "I apply information available at the industry-wide level to estimate total financial losses suffered by all participants in this fishery." (Expert Report of Robert Unsworth, annexed to Pls.' Mem. as Exh. E, at 1.) Mr. Unsworth further stated that he also used information developed by his colleague Mark Ewen, which was based on "Federal income tax returns for the three named parties and a large number of other participants in this fishery (229 in total).") (Id.) Specifically, plaintiffs' experts relied on income tax returns for the three named plaintiffs from years 1995 through 2004, and a "summary tax return statistics for a sample of 27 entities (including the three named parties) with interests in this case." (Id. at 20.) To arrive at the sample size of 27, plaintiffs' expert took a statistical sample from the revenue data that 229 settlement claimants provided to Special Master Catterson. (Id.) Plaintiffs appear to be under the impression that because they have produced to the defendants all of the information relied upon by plaintiffs' expert, plaintiffs have satisfied their discovery obligations. (See Pls.' Mem. at 6-7 ("Plaintiffs damages experts have estimated the total economic loss to the class, primarily relying upon governmental data and reports, for the jury to consider when focusing on the extent of the harm caused to the class for the jury's punitive damage determination. Cheminova has

13

been given all of the information relied upon by those experts and, of course, will be permitted to challenge the methodology employed and to cross examine plaintiffs' experts on the reliability of the evidence.").)

Cheminova is not bound by the confines of damages data considered by plaintiffs' experts. Cheminova is entitled to relevant discovery of damages data in order to formulate defendants' own theory on the computation of class-wide damages. By the interrogatories here in dispute, Cheminova seeks mitigation type discovery in order to enable its experts to put forth a distinct, competing theory of damages, namely that "the quantum of actual economic loss suffered by each claimant encompasses the income allegedly lost as a result of the triggering event, reduced by any replacement income which was (or could have been) received by the claimant." (Defs.' Mem. at 3.) Defendants argue that they need evidence as to the class members' true economic losses, including their efforts, successful or unsuccessful, to mitigate their damages (by, for example, diversifying their fishing operations or securing supplemental income). (Id.)

It is a fundamental principle of law that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. . ." that is admissible, or "reasonably calculated to lead to the discovery of admissible evidence." Rule 26(a), Federal Rule of Civil Procedure. Relevance, for purposes of discovery, "is an extremely broad concept." Ferguson v. Lion Holding, Inc., Nos. 02 Civ. 4258, 02 Civ. 4261, 2005 WL 1216300, at * 2 (S.D.N.Y. May 23, 2005). Once the requesting party has demonstrated the possibility that the discovery sought will lead to relevant evidence, the burden shifts to the party opposing production to show that discovery is improper. Id. at *3. "Generally, discovery is only limited

'when sought in bad faith, to harass or oppress the party subject to it, when it is irrelevant,' or privileged." Melendez v. Greiner, No. 01 Civ. 7888, 2003 WL 22434101, at *1 (S.D.N.Y. Oct. 23, 2003) (quoting In re Six Grand Jury Witnesses, 979 F. 2d 939, 943 (2d Cir. 1992)).

Here, the discovery defendants seek– and have sought since they served their First Set of Damages Interrogatories upon plaintiffs on December 19, 2005– is relevant to their defense, particularly as it relates to their theory of damages. While plaintiffs may disagree with the theory, there is no precedent which permits the plaintiffs to refuse to provide discovery based on their lack of agreement with defendants' theory of damages. Similarly, defendants, in conducting damages discovery, are not limited by the documents considered by plaintiffs' experts, nor are they bound by the documents provided to the Special Master to determine the appropriate division of the settlement proceeds, a settlement of which Cheminova is not a part. This is so despite plaintiffs' belief that any further production is unduly burdensome. See Melendez v. Greiner, No. 02 Civ. 7888, 2003 WL 22434101, at * 1 (S.D.N.Y. October 23, 2003) ("Materials responsive to a discovery request will not be protected based on a claim of undue burden, unless the volume and time involved in production of the requested material are excessive."). Accordingly, plaintiffs have not carried the burden of showing that the sought-after discovery is improper or overly burdensome. In addition, the reasons stated for plaintiffs' refusal to comply with the discovery demands are particularly troublesome here, given that until very recently, plaintiffs had agreed to provide the discovery that defendants requested. Indeed, as noted supra, as recently as February 13, 2006, plaintiffs' counsel stated to Judge Platt: "Plaintiffs are hopeful that by February 15th, we will be able to produce individualized responses to the Damages Interrogatories and an additional executed IRS release form from every one of

15

these approximately 235 absent class members."(See Letter from Gladstone N. Jones to Judge Platt, dated February 13, 2006, at 1.)

      B.      <u>Requirement that Interrogatories be Made Under Oath and Signed by the Person Making Them</u>

In addition to the primary disputes discussed <u>supra</u>, defendants contend that the interrogatory responses should be signed by the plaintiffs, rather than by plaintiffs' counsel. (Defs.' Mem. at 8 n.2.) Plaintiffs argue that defendants' request is late, and is "merely intended to delay and harass the absent class members." (Pls.' Mem. at 12.)

Rule 33(b) of the Federal Rules of Civil Procedure provides in pertinent part that

> (1) Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to, in which event the objecting party shall state the reasons for objection and shall answer to the extent the interrogatory is not objectionable.
> (2) <u>The answers are to be signed by the person making them</u>, and the objections signed by the attorney making them.

Fed.R.Civ.P. 33(b)(1) & (2) (emphasis added). The answers to defendants' interrogatories are deficient in that they were not made under oath and not signed by the person making them. Plaintiffs' counsel is directed to properly answer Defendants' First Set of Damages Interrogatories in accordance with the Federal Rules of Civil Procedure 33(b)(1) & (2). <u>Morin v. Nationwide Federal Credit Union</u>, 229 F.R.D. 364, 368-369 (D. Conn. 2005).

## CONCLUSION

For the foregoing reasons, the defendants' motion to compel is granted. Within 20 (twenty) days, plaintiffs shall produce to defendants, for each of the approximately 235 settlement claimants, all Federal tax information requested by Interrogatories Number 5, 10(c), and 10(d) of Defendants' First Set of Damages Interrogatories, dated December 19, 2005.

Defendants' request to compel more adequate responses to Defendants' First Set of Punitive Damages Interrogatories, propounded on January 27, 2006 and answered on February 15, 2006, is denied based on plaintiffs' adequate response. In addition, plaintiffs shall supplement their responses and provide more adequate and complete answers to Interrogatories Number 10(c) and 10(d), concerning class members' efforts at damages mitigation. All Interrogatory responses shall be signed under oath by the class member providing the response. See Rule 33(a) and (b)(2), Fed. R. Civ. P.

That portion of defendants' motion seeking preclusion is denied without prejudice to renewal before the trial judge, Judge Platt.

SO ORDERED.

Dated: Central Islip, New York
　　　 March 1, 2006

　　　　　　　　　　　　　　　　　　　　　　　/s/ E. Thomas Boyle
　　　　　　　　　　　　　　　　　　　　　　　E. THOMAS BOYLE
　　　　　　　　　　　　　　　　　　　　　　　United States Magistrate Judge